UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

IN CLERK'S OFFICE

CIVIL ACTION NO. 04-40116FDS

2004 AUG -5  A II: 50

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC D/BA
CHARTER COMMUNICATIONS
          Plaintiff

VS.

LISA MURPHY
          Defendant/Third Party Plaintiff

VS.

HENRY J. KOTARBA, JR.
          Third Party Defendant

U.S. DISTRICT COURT
DISTRICT OF MASS.

**DEFENDANT'S THIRD
PARTY COMPLAINT**

1.    The Plaintiff, Charter Communications Entertainment I, LLC, d/b/a Charter
      Communications ("Charter") has brought a Complaint against the Defendant, Lisa
      Murphy, under the Federal Communications Act of 1934, as amended by the Cable
      Communications Policy Act of 1984, the Cable Television Consumer Protection and
      Competition Act of 1992, 47 U.S.C. §553 and the Satellite Home Viewer Act of 1988, 47
      U.S.C. §605 for the unauthorized interception or reception of cable services offered
      over Plaintiff's cable system.  A copy of the Complaint is attached hereto as Exhibit A.

2.    The Defendant and Third Party Plaintiff, Lisa Murphy, resides at 841 Lebanon Hill Road,
      Southbridge, Massachusetts.

3.    The Third Party Defendant, Henry J. Kotarba, Jr., resides at Mason Road Ext., Dudley,
      Massachusetts.

4.    At all times relative to this Complaint, the Third Party Defendant resided within
      Charter's service area.

5.    The Third Party Plaintiff and the Third Party Defendant were married on September 23,
      1999 and separated in December 2000.

6.    During the time the Third Party Plaintiff and Third Party Defendant were married, the
      Third Party Defendant was a signatory on the credit cards of the Third Party Plaintiff.

7.    On or about September 14, 2000, the Third Party Defendant purchased a cable theft
      device from Modern Electronics, Inc. or its affiliates, using the Third Party Plaintiff's
      credit card.

8.    Upon information and belief, the Third Party Defendant purchased, received and
      possesses, possessed, used or assisted other persons in the use of a cable theft device

from Modern Electronics in order to effect the unauthorized reception and interception of Charter's cable services.

9.  In December 2000 the Third Party Plaintiff and Third Party Defendant separated and filed for Divorce.  A Judgment of Divorce Nisi was entered in the Worcester Massachusetts Probate Court (Docket No. 01DR0148DV1) on October 1, 2001.  A copy of the Judgment of Divorce Nisi is attached hereto as Exhibit B.

10. The Third Party Defendant took the cable theft device with him to his new residence in Dudley, Massachusetts, which is in Charter's service area.

11. The Third Party Plaintiff has never purchased, used or possessed the cable theft device.

12. Under the Judgment of Divorce, the Third Party Plaintiff and Third Party Defendant mutually released each other "from all actions, suits, debts, claims, demands and obligations whatsoever, both in law and equity, which either of them has ever had, now has, or may acquire in respect to any matter, cause or thing up to the date of this Agreement, including, but not limited to, claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only rights and obligations as are specifically provided for in this agreement and in any judgments entered by a court of competent jurisdiction."

WHEREFORE, the Third Party Plaintiff, Lisa Murphy, demands:

a.  Adjudication that the Third Party Defendant, Henry J. Kotarba, Jr., is liable to the Plaintiff for all cause of action and any sums that may be adjudicated in favor of the Plaintiff in its Complaint; and

b.  Judgment against the Third Party Defendant, Henry J. Kotarba, Jr., for all sums that may be adjudged against Defendant/Third Party Plaintiff, Lisa Murphy, in favor of the Plaintiff; and

c.  Judgment against the Third Party Defendant, Henry J. Kotarba, Jr., for the attorney's fees and costs of the Defendant/Third Party Plaintiff, Lisa Murphy, in conjunction with her defense on the Complaint of the Plaintiff and her prosecution of her Third Party Complaint.

Dated:  August 4, 2004

Edmond A. Neal, III
Montague & Desautels
Attorney for Defendant/Third Party Plaintiff
P.O. Box 428, 334 Main Street
Southbridge, MA 01550
Tel.No.: 508-764-3244
BBO # 367900

**CERTIFICATE OF SERVICE**

       I hereby certify that I have served a copy of the within document upon the Plaintiff, by mailing, by first class mail, postage prepaid, a copy of same to its attorney, Christopher L. Brown, Esquire, at his address at Murtha Cullina, 99 High Street, 20th Floor, Boston, MA 02110, this 4th day of August, 2004.

_____

Edmond A. Neal, III

## EXHIBIT "A"

FILED
IN CLERKS OFFICE

2004 JUN 17 P 12: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, | CIVIL ACTION NO. |
| Plaintiff | 04-40116FDS |
| v. |  |
| LISA MURPHY, | JUNE 14, 2004 |
| Defendant |  |

## COMPLAINT

Plaintiff, Charter Communications Entertainment I, LLC d/b/a Charter

Communications ("Charter"), by this Complaint seeks injunctive relief and damages

under provisions of the Federal Communications Act of 1934, as amended by the Cable

Communications Policy Act of 1984 and the Cable Television Consumer Protection and

Competition Act of 1992, 47 U.S.C. § 553 and the Satellite Home Viewer Act of 1988,

47 U.S.C. § 605, for the unauthorized interception or reception, or the assistance in the

unauthorized interception or reception, of cable services offered over Plaintiff's cable

system. As set forth in this Complaint, the Defendant ordered and obtained a device

expressly designed, manufactured and intended for the surreptitious and unauthorized

reception of Charter's cable services.

## JURISDICTION AND VENUE

1.      This action arises under the Federal Communications Act of 1934, as amended by the Cable Communications Policy Act of 1984 and the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, and the Satellite Home Viewer Act of 1988, 47 U.S.C. § 605.

2.      The Court has jurisdiction over this action under 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

3.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b), as the Defendant resides in the District and the claims arose here.

## APPLICABLE LAW

4.      The interception or reception, or any assistance in the interception or reception, of community antenna television ("CATV") or cable service, unless specifically authorized to do so by a cable operator or as is otherwise specifically authorized by law, is prohibited under 47 U.S.C. § 553(a).

5.      The unauthorized interception of cable service and the sale and/or installation of any device or equipment by persons knowing or having reason to know that the device or equipment is used primarily for the assistance in the unauthorized decryption of satellite cable programming is prohibited under 47 U.S.C. § 605 (a).

## PARTIES

6.      Plaintiff, Charter Communications Entertainment I, LLC d/b/a Charter Communications ("Charter"), is a Delaware limited liability company with a principal place of business at 95 Higgins Street, Worcester, Massachusetts 01606.

7. Charter is a cable operator, within the meaning of 47 U.S.C. § 522(5) and § 553(a), and provides CATV or cable service, within the meaning of 47 U.S.C. § 522(6), to its customers who are authorized to receive the particular service level or service tier and any other video programming which a customer orders from the Plaintiff and agrees to pay the applicable rates therefore.

8. Defendant Lisa Murphy resides at 841 Lebanon Hill Road, Southbridge, Massachusetts which is in Charter's service area. At all times relative to this Complaint, only a particular level of cable service was requested from and authorized by Charter at Defendant's Southbridge address.

## COUNT I – VIOLATIONS OF 47 U.S.C. § 553

9. Charter offers cable services to residents of all of its service areas for which subscribers pay a monthly fee depending upon the amount of cable television programming and services selected and purchased by the subscriber. Each subscriber who pays monthly fees to Charter is entitled to receive that level of services and programming that is purchased from Charter.

10. Charter's signals are (a) private communications not intended for public or other use without authorization, (b) communications services offered over a cable system, and (c) satellite cable programming.

11. Charter has offered and continues to offer premium programming services, such as Home Box Office, Cinemax and Showtime, and certain Pay-Per-View channels for movies and events.

12.    Charter's signals for premium programming services and for Pay-Per-View services are electronically coded or scrambled so that they must be decoded by electronic decoding equipment in order for the signals to be viewed clearly on a television receiver or monitor.

13.    To decode these signals, Charter provides subscribers of such services with electronic decoding equipment referred to as converters.

14.    Charter's converters are programmed from a central location of Charter to decode the signals and thereby enable the subscriber to view that level of cable service which she has purchased. Charter programs each of its converters specifically to permit the subscriber to view only that level of cable service and programming which she has purchased.

15.    "Pay-Per-View" is a service made available to Charter's residential subscribers.

16.    The Pay-Per-View service requires the subscriber to have an addressable converter box connected to his television receiver or monitor.

17.    To order a Pay-Per-View movie or event, the subscriber either telephones Charter and requests to view the specific Pay-Per-View movie or event or orders said movie or event by utilizing the subscriber's remote control device. Charter then programs the addressable converter box to descramble that Pay-Per-View movie or event, enabling the subscriber to receive a non-scrambled signal during the time of the broadcast.

18.    The price of Pay-Per-View movies or events varies, but presently ranges from $3.95 for certain movies to approximately $49.95 for certain sporting or other

special events. Charter subscribers are billed monthly for Pay-Per-View movies and events ordered during the previous month.

19.    Unauthorized decoders or descramblers are devices that have been designed or modified to defeat the scrambling or addressable security functions of Charter's cable system that are designed to ensure that only authorized customers of certain levels or tiers of services, or of premium or Pay-Per-View programming, receive such services (the "scrambling technology").

20.    Pursuant to business records seized or produced in AT&T Broadband v. Modern Electronics, Inc., 8:02-00430 (D. Neb. Sept. 17, 2002) ("AT&T Broadband"), Charter obtained the business records of Modern Electronics, Inc. and its affiliates ("Modern Electronics"). Included in the business records seized were records of the sales of decoders, descramblers and various devices used to effect the unauthorized reception of satellite communications services and cable programming by Modern Electronics ("cable theft devices").

21.    The business records seized or produced in AT&T Broadband indicated that the Defendant ordered and purchased from Modern Electronics on or about September 14, 2000 a cable theft device for use by the Defendant or another for the purpose of unauthorized reception of communications services offered over Charter's and/or other cable systems.

22.    Upon information and belief, the Defendant ordered, purchased, received and possesses, possessed, used or assisted other persons in the use of a cable theft device from Modern Electronics in order to effect the unauthorized reception and interception of Charter's cable services and this constitutes one violation of 47 U.S.C. § 553(a).

23.    The Defendant willfully and intentionally violated 47 U.S.C. § 553(a).

24.    Charter is "aggrieved" within the meaning of 47 U.S.C. § 553(c)(1).

25.    Charter is aggrieved by the Defendant's conduct because the device purchased by the Defendant is designed and intended to compromise and defeat the scrambling technology of cable systems such as the one operated by Charter, in violation of Charter's rights and of federal statutes.

26.    As a direct, proximate, and foreseeable result of the actions of the Defendant, Charter has sustained and continues to sustain damages and incur attorneys' fees and costs.

27.    By reason of the Defendant's violation of 47 U.S.C. § 553(a), Charter is entitled to statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii).

28.    By reason of the Defendant's violation of 47 U.S.C. § 553(a), Charter is. entitled to the recovery of full costs, including reasonable attorney's fees pursuant to 47 U.S.C. § 553(c)(2)(C).

## COUNT II—VIOLATIONS OF 47 U.S.C. § 605

1-28.   Charter incorporates by reference the allegations of paragraphs 1 through 28, above, as though fully set forth herein.

29.    By virtue of her conduct the Defendant effected the unauthorized interception and reception of Charter's satellite cable programming and communications services over its cable systems by receiving, or assisting in the reception of certain cable services without Charter's authorization and her conduct violates 47 U.S.C. § 605(a).

30.    The Defendant willfully and intentionally violated 47 U.S.C. § 605(a).

31.    Charter is "aggrieved" within the meaning of 47 U.S.C. § 605(e)(3)(A).

FROM : BRO                                FAX NO. : 508-765-1149        Jul. 01 2004 02:43PM  P1

32.    As a direct, proximate, and foreseeable result of the actions of the Defendant, Charter has sustained, and continues to sustain, damages and incur attorneys' fees and costs.

33.    By reason of the Defendant's violation of 47 U.S.C. 605(a), Charter is entitled to damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

34.    By reason of the Defendant's violation of 47 U.S.C. 605(a), Charter is entitled to recovery of full costs, including reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

## COUNT III—FEDERAL COMMUNICATIONS ACT INJUNCTIONS

1-34.    Charter incorporates by reference the allegations of Paragraphs 1-34 above, as though fully set forth herein.

35.    Pursuant to 47 U.S.C. §§ 553(c)(2)(A) and 605 (e)(3)(B)(i), Charter is entitled to a court order restraining the Defendant from engaging in any further activity, similar to that described above, which activity violates 47 U.S.C. §§ 553(a) and 605(a).

## PRAYER FOR RELIEF

WHEREFORE, Charter requests the Court to enter judgment against the Defendant as follows:

1.    For money damages in favor of Charter against the Defendant in the total amount of $20,000 in statutory damages as follows:

a.    pursuant to 47 U.S.C. §§ 553(c)(3)(A)(ii) and 553(c)(3)(B), $10,000.00 for a violation of 47 U.S.C. § 553(a) for the device purchased and used and/or

FROM : BRO                     FAX NO. : 508-765-1149           Jul. 01 2004 02:44PM  P2

then transferred or distributed to others by Defendant for assistance in the unauthorized use of communications services; and

      b.    pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II) $10,000.00 for violation of 47 U.S.C. § 605(a) for the device purchased and used and/or then transferred or distributed to others by Defendant to effect the unauthorized reception and interception of cable services; and

      2.    Ordering that the Defendant, her family, servants, agents, employees, successors and assigns and those persons in active concert or participation with any of them, are permanently enjoined and restrained from engaging in, aiding, abetting or otherwise promoting or supporting interception or reception of the cable television programming, service or signal of Charter or its parent companies or entity that is an affiliated company, partnership, or subsidiary of Charter or its parent companies (the "Charter Entities"), including, without limitation, the following: permanently enjoining and restraining Defendant from connecting, attaching, splicing into, tampering with or in any way using cable wires of Charter or the Charter Entities for purposes of obtaining any of the programming and services of Charter or the Charter Entities without Charter's express permission and authorization; permanently enjoining and restraining Defendant from manufacturing, ordering, purchasing, using, selling, distributing, installing, owning or possessing any equipment, components or parts used to make any such equipment capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter or the Charter Entities without Charter's authorization; permanently enjoining and restraining

the Defendant from attaching or connecting any such equipment to any property of Charter or the Charter Entities without Charter's authorization; permanently enjoining and restraining the Defendant from any further tampering with or making any connection or any disconnection or manipulating, in any manner, for any purpose, cable systems owned, operated, or managed by Charter or the Charter Entities without Charter's express permission and authorization, in accordance with 47 U.S.C. § 553(c)(2)(A) and 47 U.S.C. § 605(e)(3)(B)(i); and

3.     Ordering that the Defendant, her family, servants, agents, employees, successors and assigns and those persons in active concert or participation with any of them, surrender to Charter or its duly authorized agent any and all devices or equipment, components or parts capable of unscrambling, intercepting, receiving, transmitting, retransmitting, decoding or in any way making available all or part of the programming and services of Charter or the Charter Entities without Charter's express permission and authorization and any further evidence, such as Defendant's records, including, but not limited to, customer lists, sales receipts, invoices and other documents of the Defendant's purchase, use, distribution and sale of any such equipment at her home or her place of employment in accordance with 47 U.S.C. § 553(c)(2)(A) and 47 U.S.C. § 605(e)(3)(B)(i); and

4.     Awarding Charter its attorney's fees and costs in prosecuting this action, in accordance with 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605(e)(3)(B)(iii); and

5.   Granting such other relief as the Court determines is just and proper.

Dated at Boston, Massachusetts this __14__ day of June, 2004.

CHARTER COMMUNICATIONS
ENTERTAINMENT I, LLC d/b/a
CHARTER COMMUNICATIONS,

By its Attorneys,

Burton B. Cohen, BBO#656190
Christopher L. Brown, BBO#642688
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
(617) 457-4000

Dated: __June 14__, 2004

# Commonwealth of Massachusetts
## The Trial Court
### Probate and Family Court Department

Worcester___ **Division**

**Docket No.** __01DR0148DV1__

## Judgment Of Divorce Nisi

_____ Henry J. Kotarba, Jr. _____ , Plaintiff

of _____ Dudley _____ in the County of __ Worcester __

v.

_____ Lisa Murphy-Kotarba _____ , Defendant

of _____ Southbridge _____ in the County of __ Worcester __

　　All persons interested having been notified in accordance with the law, and after hearing, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of _____

_____ irretrievable breakdown _____

_____

_____

_____B_____

as provided by Chapter 208, sections 1, 2 and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that the stipulation attached hereto shall be incorporated, merged into and made a part of this Judgment. The wife is permitted to resume the use of her former name of Lisa Murphy.

Date ___October 1, 2001___

ABSOLUTE: December 31, 2001

CJ-D 403 (2/90)

_____
Justice of Probate and Family Court

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

Probate Court
Docket No.: 01 0R 0148 D/1

HENRY KOTARBA, JR.,  )
Plaintiff  )
  )
v.  )
  )
LISA MURPHY KOTARBA,  )
Defendant  )

## SEPARATION AGREEMENT

Agreement made on this 1st day of Oct. 2001 between Lisa Murphy Kotarba
(hereinafter called "Wife") of Worcester County, Massachusetts and Henry Kotarba, Jr.
(hereinafter called "Husband") of Worcester County, Massachusetts.

### STATEMENT OF FACTS

The Husband and Wife were married on October 9, 1999.

There are no children born of this marriage.

Irreconcilable differences have arisen between said parties as a result of which the
marriage has broken down irretrievably and the parties desire to live separate and apart
and continue to live separate and apart. Both parties wish to terminate the marriage.

The parties wish to enter into an agreement under which fair and reasonable provision
will be made for the support, custody, care, and education of the issue of marriage, and
for the settlement, adjustment and compromise of all property rights and liabilities
between the parties and of all other matters that should be settled in view of their
separation.

The Husband and Wife have each been fully informed and understand the facts and their
respective legal rights and liabilities and each signs this Agreement freely and
voluntarily.
NOW THEREFORE, in consideration of the mutual promises, agreements, and
convenants hereinafter contained, the Husband and Wife mutually agree as follows:

1.

## SEPARATE WAYS

The parties shall at all times hereafter live separate and apart for the rest of their natural lives. Each may reside at such a place or places as he or she may select.

## WAIVER AGAINST ESTATES

Except to enforce and collect any monies due pursuant to this agreement or any modification thereto, or any subsequent judgement of the court, the Husband and Wife each waive any right at law or in equity to elect to take under any last will made by the other, including all rights of dower or curtesy, and hearby waive, renounce, and relinquish unto each other, their respective heirs, executors, administrators, and assigns forever, all and every interest of any kind or of personal property of the other, whether now owned or hereafter required by the other. The Husband and Wife shall each have the right to dispose of his or her property by will, or otherwise in such a manner as each may in his or her uncontrolled discretion deem proper, and neither will claim any interest in the estate of the other, except to enforce any obligation imposed by this Agreement.

## MUTUAL RELEASES

The Husband and Wife hereby mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and equity, which either of them has ever had, now has, or may acquire in respect to any matter, cause or thing up to the date of this Agreement, including, but not limited to, claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only rights and obligations as are specifically provided for in this agreement and in any judgements entered by a court of competent jurisdiction.

## MUTUAL LIABILITIES

The Husband and Wife each warrant, represent, and agree that they have not and will not hereafter contract and incur any debt, charge, or liability whatsoever for which the other, her legal representatives, or her property and estate, will or may become liable, except as provided in the within agreement. The Husband and Wife each further covenant at all times to hold the other free, harmless and indemnified from and against all debts, charges or liabilities hereafter contracted or incurred by him in breach of the provisions of this paragraph; and from any and all attorneys fees, costs, and expenses incurred by each as a result of any such breach.

## MUTUAL DISCOVERY

The parties agree that each has been afforded the opportunity for full and formal discovery proceedings of any and all pertinent data with regard to the financial circumstances, assets and liabilities of the other and that they have been afforded such opportunities prior to the execution of the within agreement, and acknowledge that the rights to discovery have been fully explained to each by their respective counsel and that with knowledge of the same each does hereby waive as against the other, all rights to further discovery. Each party states that based upon his or her personal knowledge of the financial affairs of each other this Agreement, that they are satisfied as to the other's financial status, assets, and liabilities. Failure of either party to institute any further discovery proceedings prior to the execution of this agreement and any prejudice suffered by either the Husband or the Wife as a result of such failure shall not affect the validity of the within agreement.

## LEGAL COUNSEL

The parties declare and acknowledge that each has had the opportunity to seek independent legal advice of his or her own selection.

## ENTIRE AGREEMENT OF THE PARTIES

The Husband and Wife agree that this Separation Agreement is the entire agreement of the parties and that there have not been made. and that they have not relied upon. any promises, warranties, or representations except as expressly contained herein.

## EXECUTION OF RELATED DOCUMENTS

The parties agree to execute and deliver forthwith, any documents necessary to implement the provisions of this Separation Agreement, including but not limited to deeds, mortgages, promissory notes, automobile title transfers, stock certificate transfers and Federal and State tax forms.

## FAILURE OF ANY PART OF THE AGREEMENT

In the event that any part of this Agreement shall be held invalid such invalidity shall not invalidate the whole agreement but the remaining provisions of this Agreement shall continue to be valid and binding to the extent that such provisions continue to reflect fairly the intent and understanding of the parties.

## NONWAIVER OF STRICT PERFORMANCE

The failure of the Husband or of the Wife to insist in any instance upon the strict performance of any other the terms hereof shall not be construed as a waiver of such term or terms for the future, and the same shall nevertheless continue in full and effect.

## MODIFICATION

This Agreement shall not be altered or modified except by an instrument signed and acknowledged by the Husband and Wife or an order of the Court.

## MERGER OF AGREEMENT

A Copy of this Agreement shall be submitted to the Court having jurisdiction over the parties' divorce and it shall be incorporated and merged into the judgement of divorce and shall not survive as an independently enforceable agreement as to any aspects.

## GOVERNING LAW

This agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

**EXHIBITS**

There are annexed hereto, and made part hereof Exhibits.

IN WITNESS WHEREOF, the parties have set their hands on the date and year first above written.

Henry Kotarba, Jr.

Lisa Murphy Kotarba

### COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

Date: 10-1-01

Before me personally appeared Henry Kotarba, Jr. and acknowledged his execution of the foregoing agreement to be his free act and deed.

NOTARY PUBLIC

My commission expires: 7.29.05

### COMMONWEALTH OF MASSACHUSETTS

Date:

WORCESTER, SS

Before me personally appeared Lisa Murphy Kotarba and acknowledged her execution of the foregoing agreement to be her free act and deed.

NOTARY PUBLIC

My commission expires: Feb. 2, 2002

## EXHIBIT A: ALIMONY
Both parties mutually waive alimony, past, present and future.

## EXHIBIT B: MEDICAL AND DENTAL EXPENSES

The Husband shall maintain his medical and dental insurance for the wife and her
children as long as they are eligible for coverage under his policy and as long as there is
no additional cost for continuing to provide coverage for her and/or her children. If there
is an extra cost for the Wife's coverage and/or her children, she shall pay such extra cost
herself *to the husband directly one month in advance*
*as soon as the extra cost is obtained husband shall so notify wife.*
This provision shall be deemed to satisfy the requirement of Chapter 725 of the Acts and
Resolves of 1981 (MGLc 175, section 175, section 110).

The Husband and Wife shall be responsible for their own uninsured medical, surgical,
hospital, mental health, dental, prescription, and other health related expenses.

~~The Husband and Wife shall equally share all of the children's reasonable and routine
uninsured medical, dental and orthodontic expenses.~~

## EXHIBIT C: PERSONALTY

The parties agree that they have divided their tangible personal property except
the husband shall receive his tools, swords and knives, Willie McGinnis football, jacuzzi,
television, refrigerator and microwave within 90 days.

The parties agree that henceforth each of the parties shall own, have and enjoy
independently any claim or right of the other party, all items of personal property of any
kind, nature and description, wherever situated which are now owned or held by or which
may hereafter belong to or come to the Husband or Wife, with the full power to the
Husband or the Wife to dispose of same as fully and effectually in all respects and for all
purposes as if he or she were unmarried.

The Husband and Wife shall each retain their retirement plans.
Each party shall keep all bank accounts in their name.

The Husband shall be responsible for his credit card debt which includes:
- Henry Kotarba (Dad)          $10,000.
- Providian National     --     $1,991.
- Capitol One                   $596.
- Aubuchon                      $400.
- Home Depot                    $7,420.
- Zales                         $2,000.
- J.C.Penny                     $284.
- Fleet Bank                    $3,500.

6

*All tax shall be filed through H+R Block or another mutually agreeable tax preparer* [handwritten]

The Wife shall be responsible for her credit card debt which includes:

- American Express     $4,218.
- People's Bank         $6,628.
- Discover              $2,086
- Home Depot            $2,022
- Monogram              $2,627

Each party shall be solely responsible for paying any loans, insurance, and other expenses relative to their vehicles. Both parties agree, if necessary, to transfer title relative to the vehicles so they reflect the correct owners forthwith. The Wife shall retain the 1998 Convertible Mustang and Dodge Ram and the Husband shall retain the green Mustang he is driving and Dodge Intrepid.

## EXHIBIT D: TAXES

Forthwith, the parties shall file a joint 2000 tax return and the husband shall retain the entire refund including the $600.00 credit if applicable. The husband shall pay the cost of tax preparation *for both. The parties shall file a joint 2001 tax return, sub shall divide the refund so that the wife received the amount she would've received if she filed an individual tax return claiming the house. The husband, after the wife is paid her portion, shall receive the remaining amount as his portion of the refund.* [handwritten]

## EXHIBIT E: REAL ESTATE

Prior to the marriage, the wife purchased in her own name solely the property located at 841 Lebanon Hill Road, Southbridge, MA  01550. In consideration of the husband waiving all right title and interest, in the home, the wife shall forthwith pay to the husband $10,000 in cash. *11,500* [handwritten] Additionally, the wife shall pay the husband a further $5,000 four (4) years from the date of final divorce and this payment shall be secured by a non-interest bearing lien on the house payable in four years or upon the sale of the home, whichever comes first.

The wife shall retain the property and shall be responsible for all expenses thereon and hold the husband harmless relative thereto. With the exception of the $5,000 lien as stated above, the husband hereby waives all right, title and interest in 841 Lebanon Hill Road, Southbridge, MA.

*An additional $500.00 shall be due 30 days from this date for a total up front payment (including the $11,500.00 listed above) of $12,000.* [handwritten]

7